UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SEAFREEZE SHORESIDE, INC, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. 1:22-cv-11091-IT |
| | * | |
| THE UNITED STATES DEPARTMENT | * | |
| OF THE INTERIOR, et al., | * | |
| | * | |
| Defendants | * | |
| | * | |
| and | * | |
| | * | |
| VINEYARD WIND 1, LLC, | * | |
| | * | |
| Intervenor-Defendant. | * | |

MEMORANDUM & ORDER

May 25, 2023

TALWANI, D.J.

Before the court is Plaintiffs' Motion for a Stay Under 5 U.S.C. § 705 or, in the

Alternative, a Preliminary Injunction [Doc. No. 115]. For the reasons that follow, the Motion is

DENIED.

I.     Background

This case is one of four actions in this District concerning the federal government's

approval of an offshore wind energy development project to be constructed and operated by

Intervenor-Defendant Vineyard Wind 1 LLC ("Vineyard Wind") on the Outer Continental Shelf

southeast of Martha's Vineyard and Nantucket, Massachusetts (the "Vineyard Wind Project" or

the "Project").[1] A detailed overview of the Project and the agency action approving the Project is set forth in the court's May 17, 2023 Memorandum and Order [# 130] on the parties' cross-motions for summary judgment in Nantucket Residents Against Turbines, et al. v. U.S. Bureau of Ocean Energy Management, et al., 1:21-cv-11390-IT.[2]

Plaintiffs Seafreeze Shoreside, Inc., Long Island Commercial Fishing Association, Inc., XIII Northeast Fishery Sector, Inc., Heritage Fisheries, Inc., Nat. W. Inc., and Old Squaw Fisheries, Inc. filed the instant action in the District Court for the District of Columbia in December 2021 against Defendants United States Department of the Interior, United States Bureau of Ocean Energy Management ("BOEM"), United States Department of Commerce, National Marine Fisheries Service ("NMFS"), United Stated Department of Defense, Army Corps of Engineers ("Corps"), and individuals at each of the named entities in their official capacities. See Compl. [Doc. No. 1]. Plaintiffs challenge Defendants' review and approval of the Vineyard Wind Project under the Administrative Procedure Act ("APA") as violating the Marine Mammal Protection Act, the Endangered Species Act, the Clean Water Act, the Outer Continental Shelf Lands Act ("OCSLA"), the National Environmental Policy Act ("NEPA"), and numerous associated regulations. See Compl. ¶¶ 2-5, 53-347 [Doc. No. 1].

---

[1] See Melone v. Coit, et al., 1:21-cv-11171-IT; Nantucket Residents Against Turbines, et al. v. U.S. Bureau of Ocean Energy Mgmt., et al., 1:21-cv-11390; Responsible Offshore Development Alliance v. Dep't of Interior, et al., 1:22-cv-11172-IT ("the Related Actions").

[2] As discussed in that order, the Vineyard Wind Lease Area covers 166,886 acres of the Outer Continental Shelf, with the Project located in 65,296 acres of the Lease Area referred to as the Wind Development Area. Id. at 3-4; see also Pls. Mem. Exs. E, F [Doc. Nos. 116-4, 116-5] (depicting the Lease Area and location of proposed Project).

In January 2022, the court granted Vineyard Wind's unopposed <u>Motion to Intervene</u> [Doc. No. 6]. Jan. 19, 2022 Minute Order. In June 2022, the court granted Defendants' motion to transfer venue to this District. Mem. & Order [Doc. No. 35].

Plaintiffs filed their <u>Motion for Summary Judgment</u> [Doc. No. 66] on 33 separate claims in November 2022. Defendants and Vineyard Wind filed their <u>Motions for Summary Judgment</u> [Doc. Nos. 72, 86] in December 2022. The summary judgment motions were fully briefed in March 2023, and the court held oral argument on April 3, 2023. A decision on the summary judgment motions is pending.

## II.    The Pending Motion for Preliminary and Post-Judgment Relief

On May 10, 2023, Plaintiffs filed their <u>Motion for a Stay Under 5 U.S.C. § 705 or, in the Alternative, a Preliminary Injunction</u> [Doc. No. 115] (the "Motion for a Stay"). Plaintiffs seek a stay:

> postponing the effective date of and suspending the decision of the . . .
> Defendants to approve the Vineyard Wind Construction and Operations Plan
> ("COP") and to issue the Final Environmental Impact Statement [("Final EIS")]
> and Record of Decision ("ROD") until the Court rules on the Plaintiffs' motion
> for summary judgment and all appeals are completed.

<u>Id.</u> at 1. In the alternative, Plaintiffs seek "a preliminary injunction to revert to the *status quo* before the COP was approved and before the [Final EIS] and ROD were issued by the . . . Defendants" and contend that the injunction should "remain in place until this case is finally adjudged." <u>Id.</u> at 1-2.[3] In either alternative, Plaintiffs request that no bond be required. Motion

---

[3] Plaintiffs' <u>Proposed Order</u> [Doc. No. 115-2] states specifically that the court should "STAY[] AND ENJOIN" the Defendants' "decision to approve the Vineyard Wind Construction and Operations Plan and to issue the [Final EIS] and [ROD]" and should "PROHIBIT[] the . . . Defendants from allowing Vineyard Wind, its contractors, and its agent to perform further construction activities until the Court rules on the Plaintiffs' motion for summary judgment and all appeals therefrom are completed."

for a Stay 2 [Doc. No. 115]; Proposed Order 1 [Doc. No. 115-2]. Defendants and Vineyard Wind oppose Plaintiffs' Motion for a Stay [Doc. No. 115]. The evidentiary record as presented at the preliminary injunction hearing held on May 23, 2023, consists of declarations and testimony of: David Aripotch, the owner and president of Plaintiff Old Squaw Fisheries, Inc. [Doc. No. 115-1]; Klaus Skoust Moeller, Chief Executive Officer of Vineyard Wind [Doc. No. 122-1]; Dennis M. King, Ph.D., an economist [Doc. No. 122-3]; Jill Rowe, an environmental engineering consultant with Epsilon Associates, Inc. [Doc. No. 122-4]; and Larry Wise, P.E., an engineering consultant with W.F. Baird and Associates Ltd. [Doc. No. 122-5]; email communications between the parties, and maps, timelines, and navigational advisories to mariners pertaining to the Project.

## III.    Standard of Review

### A.    *Preliminary Injunction*

The issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to such relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). In evaluating a motion for a preliminary injunction, the court considers four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)).

The first two factors are the most important. Together Employees v. Mass. Gen. Brigham, Inc., 32 F.4th 82, 85 (1st Cir. 2022); see also Dist. 4 Lodge of Int'l Ass'n of Machinists and Aerospace Workers Local Lodge 207 v. Raimondo, 40 F.4th 36, 39 (1st Cir. 2022).

B.      *Stay under 5 U.S.C. § 705*

Under the APA, 5 U.S.C. § 705, a court reviewing agency action may issue "all necessary and appropriate process" to postpone the effective date of agency action or preserve status pending review "on such conditions as may be required and to the extent necessary to prevent irreparable injury[.]" Id. Although a stay under Section 705 is distinct from a preliminary injunction insofar as it operates not on the actor, but "upon the judicial proceeding itself," a stay has some "functional overlap" with preliminary injunction and, as to the factors considered for each form of relief, there is "substantial overlap." Nken v. Holder, 556 U.S. 418, 434 (2009). Those factors are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

 Id. (quotations omitted). As with a preliminary injunction, the first two factors are the most critical. Boston Parent Coalition for Academic Excellence Corp. v. School Comm. of City of Boston, 996 F.3d 37, 47 (1st Cir. 2021) (quoting Nken, 556 U.S. at 129).

Unlike a preliminary injunction, a stay under 5 U.S.C. § 705 does not expressly require the movant post a bond. Compare 5 U.S.C. § 705 ("the reviewing court . . . may issue all necessary and appropriate process . . . to preserve status or rights pending conclusion of the review proceedings") with Fed. R. Civ. P. 65 (c) (requiring that the "court may issue a preliminary injunction…only if the movant gives a security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

C.     *Stay Pending Appeal*

Although Plaintiffs' motion seeks a stay until all appeals are complete, that further request is not addressed in Plaintiffs' memorandum. In any event, a request to stay this court's judgment is premature where judgment has not yet been entered.

**IV.     Discussion**

A.    *Likelihood of Success on the Merits*

The first factor under either Rule 65 or 5 U.S.C. § 705 is whether Plaintiffs have established a likelihood of success on the merits. Plaintiffs focus their Motion for a Stay on a subset of claims under NEPA and OCSLA. See Pls. Mem. 1 [Doc. No. 116].

1.     NEPA Claims

Plaintiffs bring 11 separate APA claims alleging violations of NEPA. Compl. ¶¶ 278-347 [Doc. No. 1]; see also Pls. Mem. 1, 7-9 [Doc. No. 116]. NEPA is an environmental statute intended to protect environmental interests, not purely economic ones. See, e.g., Gunpowder Riverkeeper v. F.E.R.C., 807 F.3d 267, 274 (D.C. Cir. 2015).

Plaintiffs claim that their ability to generate revenue from fishing activity will be harmed by the Project. Where Plaintiffs have not demonstrated that their anticipated harms are more than purely economic, they have not established standing to bring their NEPA claims. Accordingly, Plaintiffs have not shown a likelihood of success as to their NEPA claims.

2.     OCSLA Claims

Plaintiffs also bring numerous APA claims alleging that various actions taken by Defendants in connection with wind leasing and the Vineyard Wind Project violate Section 8(p)(4) of OCLSA, 43 U.S.C. § 1337(p)(4). See Compl. ¶¶ 143-179 [Doc. No. 1]. In their Motion for a Stay [Doc. No. 115], Plaintiffs focus specifically on their challenge of BOEM's

6

approval of Vineyard Wind's Construction and Operations Plan ("COP") for the Project as flawed where Plaintiffs allege BOEM failed to ensure the COP provided for the factors enumerated in Section 8(p)(4), including "safety" and "protection of the environment." Pls. Mem. 5-7 [Doc. No. 116]. Defendants and Vineyard Wind contend that Plaintiffs have not shown a likelihood of success on the merits where the Administrative Record demonstrates that BOEM complied with OCSLA through a lengthy inter-agency approval process for the COP. See Fed. Defs. Opp. 4-5 [Doc. No. 123]; Vineyard Wind Opp. 13 [Doc. No. 122].

Based on a review of the Administrative Record, Plaintiffs have not demonstrated a substantial likelihood of success on their claims that the Defendants acted arbitrarily, capriciously, otherwise not in accordance with law, or otherwise failed to comply with their obligations under Section 1337(p)(4).

B.    *Irreparable Harm*

As to the second factor under both Rule 65 and 5 U.S.C. § 705, Plaintiffs must demonstrate that, absent an injunction, irreparable harm is likely. See Winter v. Nat. Resources Def. Council, 555 U.S. 7, 22 (2008). Irreparable injury means "an injury that cannot adequately be compensated for by either a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Heath Ctr. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005). The movant's showing of irreparable harm must "possess some substance; a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996).

Plaintiffs fail to carry their burden as to this factor as well. Plaintiffs' substantial delay in seeking preliminary relief is fatal to their claim of irreparable harm. Even if it were not, Plaintiffs

have not carried their burden of proof as to irreparable harm, where the only injuries they have

put forth are purely economic injuries compensable by money damages, they have not shown the

compensation funds available would be insufficient to address their claimed economic injuries

pending a decision on the parties' cross-motions for summary judgment, and finally, they have

not shown preliminary relief will address the alleged irreparable harm of which they complain.

    1.  Timing

    Plaintiffs assert that a stay is necessary now because the commercial trawl fishing season

in the Vineyard Wind Lease Area begins in late May and Vineyard Wind's installation of scour

protection, cables, and monopiles will impact not only the 2023 fishing season but also

"permanently" impact Plaintiffs' ability to safety navigate through and fish in the Vineyard Wind

Lease Area. Pls. Mem. 1, 12, 14 [Doc. No. 116]; see also Decl. of David Aripotch in Supp. of

Pls. Mot. for Stay ("Aripotch Stay Decl.") ¶¶ 7, 9-11, 13 [Doc. No. 115-1]. Defendants and

Vineyard Wind respond that Plaintiffs' delay in seeking relief, despite knowing the timeline of

the Project many months in advance, is fatal to any claim of irreparable harm. See Fed. Defs.

Opp. 8-10 [Doc. No. 123]; Vineyard Wind Opp. 6-7 [Doc. No. 122].

    A party requesting preliminary injunctive relief must demonstrate reasonable diligence.

Benisek v. Lamone, 138 S.Ct. 1942, 1944 (2018). As the First Circuit has articulated, "cries of

urgency are sharply undercut by [a plaintiff's] own rather leisurely approach to the question of

preliminary injunctive relief." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151,

163 (1st Cir. 2004).

    Plaintiffs have not demonstrated reasonable diligence. The Final Environmental Impact

Statement ("Final EIS") was issued in March 2021, the Record of Decision ("ROD") was issued

in May 2021, and the COP Approval that Plaintiffs now seek to suspend was issued in July 2021.

Plaintiffs sent a 52-page 60-day notice of intent to sue letter [Doc. No. 1-1] to Defendants in September 2021 and filed this action in December 2021. Compl. [Doc. No. 1]. But Plaintiffs did not seek preliminary relief at that time. Instead, at Plaintiffs' request, the parties' proposed summary judgment briefing did not commence until November 2022, in part to allow Plaintiffs more time to review the Administrative Record.[4] Clerk's Notes [Doc. No. 53]; Aug. 20, 2022 Scheduling Order [Doc. No. 55]; see also Fed. Defs. Opp., Ex. 1 [Doc. No. 123-1].

The current construction schedule for the Project has been publicly available on BOEM's website since January 2022 ("January 2022 Schedule"). Aripotch Stay Decl. Ex. 1 [Doc. No. 115-1]; Decl. of Klaus Skoust Moeller in Opp. to Mot. for Stay ("Moeller Decl.") ¶¶ 18-19 [Doc. No. 122-1]. The January 2022 Schedule reflects that cables would be placed beginning in Q2 2022 through Q4 2023, scour protection would be placed beginning in Q2 2023, through the start of Q3 2023, and foundation installation for the wind turbine generators would begin in later in Q2 2023, and continue through the end of Q3 2023. Aripotch Stay Decl. Ex. 1 [Doc. No. 115-1].

Pointing to a schedule provided by Vineyard Wind to BOEM on March 31, 2023, Plaintiffs claim that Vineyard Wind has sped up. See Aripotch Stay Decl. Ex. 2 [Doc. No. 115-1] (reflecting that scour protection would begin March 18, 2023, rather than March 31, 2023).[5] But regardless of whether scour protection was scheduled for March 18, 2023, or March 31, 2023, Plaintiffs did not file their Motion for a Stay [Doc. No. 115] until May 10, 2023, despite knowing for months that installation of the monopiles would commence in May 2023 and that

---

[4] Plaintiffs' 60-day letter, along with the public comments lodged by Plaintiff Seafreeze Shoreside and others, see Compl. ¶¶ 70, 123, 124, 292, 321 [Doc. No. 1], reflect Plaintiffs' familiarity with the record before the agencies even before the Administrative Record was certified and filed here.

[5] Plaintiffs' more general claims that the Project has "sped up" are not supported by the record and, in any event, do not cure Plaintiffs' lack of diligence.

installation of cables and scour protection had already commenced. Plaintiffs' significant delay

in seeking a stay or preliminary injunction undermines their claims of irreparable harm.

        *2.    Economic Harm*

      Plaintiffs claim that they will be irreparably harmed by the inability to fish in the

Vineyard Wind Lease Area. Pls. Mem. 12 [Doc. No. 116]. They contend that this inability to fish

in the Lease Area will impact the trawl fishermen's bottom-lines, and that "seafood processors

and distributors [like Plaintiff Seafreeze Shoreside] will suffer due to decreased catches." Id. at

13-14; see also Aripotch Stay Decl. ¶¶ 9 [Doc. No. 115-1] ("when Vineyard Wind begins pile-

driving…the damage to my livelihood and ability to fish within the Vineyard Wind [L]ease

[A]rea, and therefore to Old Squaw's revenues, will become irreparable."). Aripotch asserts that

fishing in the Vineyard Wind Lease Area typically generates approximately 30% of Old Squaw

Fisheries' revenues each year. Aripotch Stay Decl. ¶ 4 [Doc. No. 115-1]. Vineyard Wind and

Defendants contend that Plaintiffs' claimed economic harm is insufficient to establish irreparable

injury and is premised on the incorrect assertion that Plaintiffs will be unable to fish in the

Vineyard Wind Lease Area. See Vineyard Wind Opp. 9-11 [Doc. No. 122]; Fed. Defs. Opp. 13-

15 [Doc. No. 123].

      While the general rule is that "traditional economic damages can be remedied by

compensatory awards, and thus do not rise to the level of being irreparable…[i]injunctive relief

is permissible, however, where the potential economic loss is so great as to threaten the existence

of the movant's business." NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc., 927

F.3d 1, 5 (1st Cir. 2019) (quotations omitted). Plaintiffs have made no such showing here.

Plaintiffs do not offer any offer documents to support Aripotch's statement regarding Old Squaw

Fisheries' annual revenues, nor do they offer evidence to demonstrate the financial significance

of fishing activities in the Vineyard Wind Lease Area for any of the Plaintiffs. Instead, Plaintiffs

rely on a "speculative forecast of anticipated harm" in the form of Aripotch's statements that

Plaintiff Old Squaw Fisheries will experience a decline in revenue because of the Vineyard Wind

Project. See Ross-Simons of Warwick, Inc., 102 F.3d at 18. The court finds this testimony

unpersuasive as to any economic harm, let alone evidence of harm so great as to threaten the

existence of Plaintiffs' businesses.

Moreover, Plaintiffs' claimed harm is based on estimates of their revenue from the entire

Vineyard Wind Lease Area. But the Vineyard Wind Project is located over a 65,296 acre section

of the 166,886 acre Vineyard Wind Lease Area. The unrebutted evidence offered by Vineyard

Wind reflects further that the scour protection Plaintiffs contend will preclude fishing occupies

just 17 acres of that 65,296 acre area. Decl. of Jill Rowe ¶ 13 [Doc. No. 122-4]. In sum,

Plaintiffs' claim that they will suffer economic injury sufficient to support a preliminary

injunction is wholly unsupported.[6]

### 3.    *Redressability*

There is no dispute that construction is well underway. An order seeking to preserve the status

quo until the summary judgment motions are addressed would merely stop construction where it

---

[6] Plaintiffs also assert that the compensation mitigation program established by Vineyard Wind
as a condition of BOEM's approval of the COP is "woefully inadequate" to compensate
Plaintiffs for the economic injuries they will suffer as a result of the Project. Pls. Mem. 14-15
[Doc. No. 116]; Aripotch Stay Decl. ¶ 14 [Doc. No. 115-1]. Where Plaintiffs' have not
established they will suffer economic harm that is irreparable absent a preliminary injunction or a
stay, the court need not consider whether the mitigation program is sufficient. In any event, the
uncontradicted evidence presented at the preliminary injunction hearing is that the $26.7 million
Vineyard Wind has set aside in compensation funds to cover gear damage and revenue losses
should be adequate over the life of the Project. Decl. of Dennis M. King, PhD ¶¶ 30-32 [Doc.
No. 122-3]. As such, those amounts are certainly sufficient to redress any harm that Plaintiffs
may suffer pending a decision on the parties' cross-motions for summary judgment.

stands. Placement of "scour protection," in the form of two types of stone on the ocean floor near the location of future monopiles, is near completion. See Pls. Mem. Ex. D [Doc. No. 116-4]. Similarly, foundation installation for the wind turbines has, or will, commence imminently. While Plaintiffs contend Aripotch will be forced to avoid the Vineyard Wind Lease Area if the Project is allowed to continue, Aripotch repeatedly stated in his testimony at the May 23, 2023 hearing on Plaintiffs' Motion for a Stay [Doc. No. 115] that, in light of the scour protection and other aspects of the Project already in place, he would "avoid the area" and that he will not "even steam through" the Lease Area "so long as those rocks are down there." Accordingly, a preliminary injunction or stay will not prevent Aripotch's complained-of harm.[7]

C.   *Balance of Equities*

As to the third factor for either a preliminary injunction or a stay, the court considers the balance of equities between the parties. Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006).

Plaintiffs contend that this factor cuts in their favor because of the "irreparable harm" to Plaintiffs' livelihood that will result should an injunction not issue. See Pls. Mem. 16 [Doc. No. 116]. As detailed above, however, Plaintiffs have not demonstrated "irreparable harm," but at

---

[7] Plaintiffs attempt to side-step this result by asserting that the court should order Defendants to "maintain and preserve the status quo as it was before Defendants approved the COP and before the Final EIS and ROD were issued." Pls. Mem. 10 [Doc. No. 116]; see also Motion for a Stay 1 [Doc. No. 115] (seeking an order "revert[ing]" to the status quo). But an order directed to Defendants or Vineyard Wind to undo the construction that has in the occurred in the 22 months since the COP was approved is not fairly characterized as "a return to the last uncontested status," as urged by Plaintiffs, but instead would amount to a mandatory injunction that "alters rather than preserves the status quo." Braintree Labs. v. Citigroup Global Mkts., Inc., 622 F.3d 36, 40 (1st Cir. 2010). Such an injunction may be granted "only in those circumstances when the exigencies of the situation demand such relief," id. (quotations omitted), a showing that Plaintiffs here have failed to make.

most, economic loss. Moreover, in balancing the equities, the court may consider substantial delay on the movant's part. See Benisek, 138 S.Ct. at 1944.[8]

Plaintiffs also contend that an injunction will not harm Defendants because Defendants "lack any legitimate interest in implementing unlawful agency action." See Pls. Mem. 16 [Doc. No. 116]. But as detailed above, Plaintiffs have not shown a substantial likelihood of success on the merits of their claim that Defendants engaged in unlawful agency action. Defendants' further response, focusing on a combined third and fourth factor addressing the public interest where the government is the opposing party, see Fed. Defs. Opp. 17 [Doc. No. 123], is discussed below.

Plaintiffs contend that Vineyard Wind assumed the risk of a stay of construction. Pls. Mem. 17 [Doc. No. 116]. Regardless of whether this contention would have had persuasive force if a preliminary injunction had been filed in the early stages of the project, the argument has no purchase now, however, where the COP was approved almost two years ago and construction is well underway. At this juncture, where Vineyard Wind has introduced unrebutted evidence that it has invested $1.825 billion spent so far on the Project, that it is likely to face $1 million a day of uncompensated costs should a stay or injunction issue, and that in light of the tight construction schedule, the entire Project may be jeopardized if the construction is stayed, see Moeller Decl. ¶¶ 23-24 [Doc. No. 122-1], Vineyard Wind cannot be said to have assumed the risk of a mid-Project stay.

In response to Vineyard Wind's showing that it will face significant financial harm and possible devastation to the Project entirely should a stay or preliminary injunction issue,

---

[8] To the extent that Plaintiffs contend the balance of equities cuts in their favor because of the potential environmental devastation that may result absent an injunction or stay, Pls. Mem. 16-17 [Doc. No. 116], that argument is unsupported by the Administrative Record and untethered to the claims that Plaintiffs have standing to bring.

Plaintiffs argue that, if they can demonstrate a likelihood of success on the merits, the court may ignore Vineyard Wind's economic losses. Pls. Mem. 17 [Doc. No. 116] (quoting Jagex Ltd. v. Impulse Software, 750 F. Supp. 2d 228, 239 (D. Mass. 2010); see also Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, 843 F.2d 600, 612 (1st Cir. 1988)). This argument fails not only where the court concludes Plaintiffs have not established a likelihood of success on the merits, but also because Plaintiffs misconstrue the case law. The cited cases arise in and apply to copyright infringement claims, where the lost profits arise from the likely infringement, and do not support disregarding economic losses to a nonmovant on other claims.

Plaintiffs' suggestion that the court need not consider Vineyard Wind's lost profits is also undermined by their argument that the court should proceed under 5 U.S.C. § 705 and relieve Plaintiffs of any obligation to post a bond. The imposition of a bond under Rule 65 serves the purpose of allowing a court to grant preliminary relief with some measure of protection for the nonmovant, in the event the matter is finally decided in the nonmovant's favor. In Plaintiffs' scenario, the court would ignore Vineyard Wind's economic losses altogether and provide no protection despite the preliminary nature of the relief sought. Equity is not so one-sided. In sum, on the record before the court, the balance of the equities cuts towards Vineyard Wind and against enjoining the Project, even briefly.

D.    *Public Interest*

Plaintiffs assert that the Project is not in the public interest because the Project would "cause radar interference that would endanger national security and public safety," and would decrease Plaintiffs' catch, "thereby decreasing the national food supply." Pls. Mem. 18 [Doc. No. 116]. Plaintiffs offer no credible evidence, however, to support their claimed risks to national security or the nation's food supply.

Defendants and Vineyard Wind assert that the Project is in the public interest, as reflected by both the Executive Branch's policy statements concerning the climate crisis and Congress's intent in passing the Energy Policy Act of 2005, which authorized the Secretary of the Interior to approve renewable energy projects on the Outer Continental Shelf. Fed. Defs. Opp. 17-18 [Doc. No. 123]; Vineyard Wind Opp. 18 [Doc. No. 122]. Congressional and Executive policy have identified a public interest in promoting renewable energy initiatives for the public's benefit. As another court has summarized, "Congress has articulated the public policy that our nation should incorporate clean energy as a necessary part of America's future and it is essential to securing our nation's energy independence and decreasing greenhouse emissions." W. Watersheds Project v. Bureau of Land Mgmt., 774 F. Supp. 2d 1089, 1103 (D. Nev.), aff'd, 443 F. App'x 278 (9th Cir. 2011) (citing the Energy Policy Act of 2005). Accordingly, this factor weighs against the injunction sought by the Plaintiffs.

## V.   Conclusion

For the foregoing reasons, all four factors weigh against the relief requested, and accordingly, Plaintiffs' Motion for a Stay Under 5 U.S.C. § 705, or, in the Alternative, a Preliminary Injunction [Doc. No. 115] is DENIED.

IT IS SO ORDERED

May 25, 2023                                         /s/ Indira Talwani
                                                     United States District Judge

15