```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                                        )
SEAFREEZE SHORESIDE, INC., et al.,      )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )
                                        )
UNITED STATES DEPARTMENT OF THE         )
INTERIOR, et al.,                       )   Civil Action No.
                                        )   1:22-cv-11091-IT
        Defendants,                     )
                                        )
and                                     )
                                        )
VINEYARD WIND 1 LLC,                    )
                                        )
        Intervenor-Defendant.           )
                                        )
_____


      BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE


                    STATUS VIDEOCONFERENCE



                    Thursday, May 18, 2023
                          1:50 p.m.




John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts


Robert W. Paschal, RMR, CRR
Official Court Reporter
rwp.reporter@gmail.com
```

**A P P E A R A N C E S**

On behalf of the Plaintiffs:

    TEXAS PUBLIC POLICY FOUNDATION
    BY:   THEODORE HADZI-ANTICH
         CONNOR WILLIAM MIGHELL
    901 Congress Avenue
    Austin, TX   78701
    (512) 472-2700
    tha@texaspolicy.com
    cmighell@texaspolicy.com

    LAWSON & WEITZEN, LLP
    BY:   IRA H. ZALEZNIK
    88 Black Falcon Avenue
    Suite 345
    Boston, MA   02210
    (617) 439-4990
    izaleznik@lawson-weitzen.com


On behalf of the Federal Defendants:

    UNITED STATES DEPARTMENT OF JUSTICE
    BY:   LUTHER L. HAJEK
    999 18th Street, South Terrace
    Suite 370
    Denver, CO   80202
    (303) 844-1376
    luke.hajek@usdoj.gov

    UNITED STATES DEPARTMENT OF JUSTICE
    BY:   MARK BROWN
         ANGELA ELLIS
         PERRY M. ROSEN
    Ben Franklin Station
    PO Box 7611
    Washington, DC   20044
    (202) 305-0204
    mark.brown@usdoj.gov
    angela.ellis@usdoj.gov
    perry.rosen@usdoj.gov

```
On behalf of the Intervenor-Defendant:

    SIDLEY AUSTIN LLP
    BY:  JACK W. PIROZZOLO
    60 State Street
    36th Floor
    Boston, MA  02109
    (617) 223-0300
    jpirozzolo@sidley.com
```

```
 1                    P R O C E E D I N G S
 2              (In open court at 1:50 p.m.)
 3              THE DEPUTY CLERK:  United States District Court is
 4   now in session, the Honorable Judge Indira Talwani presiding.
 5              This is Case Number 22-cv-11091, Seafreeze
 6   Shoreside, Inc., et al., versus United States Department of
 7   the Interior, et al.
 8              Will counsel please identify themselves for the
 9   record.
10              MR. HADZI-ANTICH:  Theodore Hadzi-Antich
11   representing the Seafreeze plaintiffs.  I'm joined by my
12   colleague Connor Mighell and our local counsel Ira Zaleznik.
13              THE COURT:  Good afternoon.
14              MR. ZALEZNIK:  Good afternoon, Your Honor.
15              MR. MIGHELL:  Good afternoon, Your Honor.
16              MR. PIROZZOLO:  Good afternoon, Your Honor.  Jack
17   Pirozzolo on behalf of Vineyard Wind.
18              THE COURT:  Good afternoon.
19              MR. HAJEK:  Good afternoon, Your Honor.  This is
20   Luke Hajek of the Department of Justice on behalf of the
21   federal defendants.  With me are my colleagues Mark Brown,
22   Angela Ellis, and Perry Rosen.
23              THE COURT:  Good afternoon.
24              So this status conference is at Vineyard Wind's
25   request to set a briefing schedule and hearing date on
```

1  plaintiffs' motion for a stay or, in the alternative, a
2  preliminary injunction.
3           MR. PIROZZOLO:  I think --
4           THE COURT:  What are you seeking here?
5           MR. PIROZZOLO:  Yeah, thank you, Your Honor.
6           What Vineyard Wind is requesting here is that
7  Vineyard Wind file its responsive brief no later than
8  tomorrow.  My understanding is that the federal defendants
9  may need until early next week to file their brief.  We would
10 like, if the Court is inclined to grant a hearing in this
11 matter, that we schedule a hearing sometime next week
12 following the submission of the federal defendants' brief.
13          We do not believe a reply brief is appropriate in
14 the posture of this case.  And with regard to a hearing, if
15 you're inclined to set a hearing, Vineyard Wind would be
16 prepared to have its witnesses present if you were going to
17 take evidence.  We could rely on our declarations and permit
18 the witnesses to be made available for cross-examination.
19          THE COURT:  Okay.  What's plaintiffs' response to
20 that?
21          MR. HADZI-ANTICH:  With regard to the briefing,
22 we're fine with Vineyard Wind submitting their response
23 tomorrow and the federal defendants' next week.
24          With regard to the hearing, as you may know, I work
25 out of my home office in California.  So, you know, it may be

1    somewhat problematic for me to attend next week; but if we
2    set it, you know, at a reasonable time, maybe the tail end of
3    the week, then I could make it happen.
4             With regard to witnesses, you know, we've -- we
5    have filed probably close to a dozen sworn declarations, and
6    I think we would rely on those.  We will certainly do our
7    best to make those available for cross-examination in a
8    hearing, but all of our witnesses are on the East Coast, most
9    of whom are at some distance from Boston.  So we would need
10   to work that out.
11            THE COURT:  Well, it's plaintiffs' motion.  What
12   were you thinking that you wanted for a hearing on your
13   motion?
14            MR. HADZI-ANTICH:  Well, we would want a hearing
15   based on the filings.  We do reserve the right to file a
16   motion for leave to reply and if the Court does have a
17   hearing, you know, at the earliest possible time, given the
18   distances.
19            THE COURT:  Well, you're saying given the
20   distances.  I understand there's a -- given the distances --
21   I'm not the one who is going to calculate your math of when
22   your witnesses can show up or not.  So you're the one who's
23   asking for relief on an expedited basis, which, you know,
24   I'll be very honest, I'm trying hard to get through the
25   material I have.

1       If you want to throw other things in front of that
2  material, it means I don't get to the stuff that I'm working
3  through.  If that's what you want to do, you know, you have a
4  right to file a motion for preliminary injunction at any
5  time.
6       So I will hear your motion for preliminary
7  injunction; but to say, "We want a motion for preliminary,
8  but we don't even know when we want it heard, we don't know
9  when our witnesses are available," that doesn't really work
10 so well.
11      MR. HADZI-ANTICH:  Subject to contacting my
12 witnesses, I would say before the end of the month, which
13 is --
14      MR. PIROZZOLO:  Your Honor, may I be heard on that
15 for a moment?
16      THE COURT:  I'm sorry; where did that come from?
17      MR. PIROZZOLO:  Mr. Pirozzolo.  I know you don't
18 hear from me much in this case, but I can't help myself.  May
19 I be heard on that for a moment?
20      THE COURT: Absolutely.  Absolutely.
21      MR. PIROZZOLO:  So I do want to flag this is -- of
22 course, you've noted -- this is the plaintiffs' motion on an
23 expedited basis.  One of the reasons we are looking to
24 expedite this is that the filing of this motion and the
25 pendency of the PI and TRO has real concrete effects on the

```
 1    business and operations of Vineyard Wind.  This is not some
 2    thought that is out in the ether.  There are people out
 3    working right now on this project.
 4            There are implications with regard to financing.
 5    The mere pendency of this motion has significant impacts on
 6    the business and operations of Vineyard Wind, and that's why
 7    we need to have this and would like to have this resolved as
 8    quickly as possible.
 9            And if I might add something in addition to that, I
10    doubt you've had a chance to look at the briefing; but when
11    you do, when you look at the plaintiffs' briefs, you will see
12    at page 15 of their brief they say that this supposed
13    emergency of irreparable harm started on March 14th --
14    March 14th.  That was two months ago.  That was nearly a
15    month before the summary judgment motions.
16            We could have -- and, in fact, we had
17    communications with the plaintiffs about this very issue back
18    in March where we were -- they were discussing bringing a
19    preliminary injunction two months ago.  And if you read the
20    papers, you will see that the issue they are focused on has
21    to do with the scour.
22            The scour has gone in.  The scour is -- there's --
23    59 or something of the 63 sites are all done.  And they wait
24    until the day before the construction set -- schedule was set
25    for us to start on the monopiles to drop this motion on us.
```

```
 1                 And it has real impacts to Vineyard Wind as a
 2    matter of -- again, this is -- this is a combination of --
 3    there's a cascading effect potentially to Vineyard Wind,
 4    which is why we need to have these things adjudicated.  They
 5    have a right.  We don't dispute that they have a right to
 6    seek relief, but what they don't have a right to do is to
 7    manufacture an emergency.  And --
 8                 THE COURT:  Well --
 9                 MR. PIROZZOLO:  And that is -- and that is why to
10    say the end of the month, that is just not going to be
11    acceptable to Vineyard Wind under these circumstances.
12                 THE COURT:  Well, so --
13                 MR. PIROZZOLO:  It is their motion.
14                 THE COURT:  It is their motion, and it may not be
15    acceptable to do the end of the month.  The problem is I also
16    have a schedule, and I -- this has been dropped on me.  I
17    don't know why it wasn't filed two months ago either.
18                 I understand that everybody is waiting on my
19    decisions.  There's a lot of paper there.  It would be faster
20    if I didn't have 33 different claims to go through on this
21    case alone, let alone the ones on all of the other ones.  I'm
22    not sure why there's so many different claims and so many
23    different versions, but I am doing my best.
24                 So I have all of that.  This comes in.  I'm getting
25    you in as quickly as I can.  I agree with you that at this
```

1   late date, we don't need to wait on a reply brief, but I have
2   a schedule as well.  So I can't simply say, because
3   plaintiffs have filed this motion at the last minute, I
4   don't -- granting the plaintiffs' relief as we speak --
5   you're saying the pendency of it impacts you, but I --
6   that's -- you know, that's something hard for me to find any
7   way to address it.
8          I am happy to try and schedule this thing as fast
9   as I can, but I can tell you that -- you know I can only do
10  so much.  I -- you're saying you will file an opposition
11  tomorrow, is Friday.
12         The federal defendants will file an opposition --
13  can file an opposition by when?
14         MR. HAJEK:  We can file it by Monday, Your Honor.
15         THE COURT:  Okay.  So if you file it by Monday, I
16  am unavailable on Thursday and Friday.  I don't think I can
17  read the papers on Monday if you file them on Monday.  I have
18  fully booked on Wednesday, so I think the only possibility
19  would be the 23rd; and I don't know what I would be able to
20  do on the 23rd, but I suppose I can try and set it for that.
21         Ms. Marchione, on the morning of the 23rd, do I
22  have anything?
23         THE DEPUTY CLERK:  You do not, Your Honor.
24         THE COURT:  Okay.  23rd, bring your witnesses.
25  we'll start at 9:00 in the morning.

1        THE DEPUTY CLERK: Will that be in person,
2   Your Honor, or on Zoom?
3        THE COURT: In person. It's a hearing, an
4   evidentiary hearing.
5        MR. HADZI-ANTICH: Your Honor, may I reply to
6   Vineyard Wind's counsel just for a moment?
7        We were considering filing our stay motion prior to
8   the MSJ hearing that was held on April 3rd. But Vineyard
9   Wind's counsel persuaded us -- they persuaded us that their
10  activities would be minimal before the hearing date, and so
11  we refrained from filing the motion at that time because the
12  hearing date of April 23rd was upcoming. It was just within
13  a week of the discussions that Vineyard Wind and I, their
14  counsel and I, have had.
15       So they basically persuaded us, "Well, don't file
16  this before the hearing because the construction activities
17  prior to the hearing date are going to be minimal."
18       THE COURT: Okay. And so that was April 23rd.
19  Then what happened?
20       MR. HADZI-ANTICH: April 3rd was the hearing date.
21       THE COURT: April 3rd. Then what happened?
22       MR. HADZI-ANTICH: And then since then, they've
23  been going full speed ahead in the --
24       THE COURT: Okay. But since, they made no
25  representations as to what was happening after the hearing

```
 1   date, correct?
 2            MR. HADZI-ANTICH:  They did not.
 3            MR. PIROZZOLO:  That is correct, Your Honor.
 4   And --
 5            THE COURT:  So April -- April 3rd -- April 3rd,
 6   you -- there's nothing to have stopped you at the hearing to
 7   say, "Judge, we know that you're getting to this when you
 8   can.  By the way, we're also going to file a motion for
 9   preliminary injunction, so why don't you put this in front of
10   the other cases?"
11            MR. HADZI-ANTICH:  Well, here's what informed our
12   judgment after April 3rd:  Vineyard Wind started going full
13   steam ahead, first placing scour protection and armoring
14   around each of the 62 monopiles.
15            THE COURT:  So we are not going on the merits.  You
16   are concerned about what they are doing.  You do not get a
17   stay without an order from me.
18            MR. HADZI-ANTICH:  Yes.
19            THE COURT:  What Mr. Pirozzolo is saying is that
20   the effect of your motion is to impact what's happening with
21   the project.  Maybe that's your intention, but that doesn't
22   seem fair ball.  It seems to me, if you want a stay, I'm the
23   one to decide it.
24            So you filed your motion.  It has its impact.
25   We'll get a hearing date.  And I am giving you -- at some
```

1    great inconvenience to myself, I am giving you the 23rd of
2    this month.
3            MR. HADZI-ANTICH:  We will --
4            THE COURT:  Is there a problem with that?
5            MR. HADZI-ANTICH:  There is not a problem with
6    that.  The only thing I'll add is that Vineyard Wind's
7    problems are their own fault.  They signed the power --
8            THE COURT:  Sorry.  I'm -- Mr. Hadzi, are you --
9    are you arguing about scheduling?  Because today's status
10   conference is not the merits of the motion to stay and for a
11   preliminary injunction.  That's not what we're doing right
12   now.  We're scheduling.  It's just a scheduling order.
13           MR. HADZI-ANTICH:  Understood, Your Honor.  I just
14   wanted to clarify for the record some of the, I believe,
15   misrepresentations that counsel made.
16           THE COURT:  We'll look forward to the brief on the
17   19th, brief on the 22nd, and a hearing on the morning of the
18   23rd.  Did I say 9:00?  9:30.  Let's be realistic here.
19           MR. PIROZZOLO:  And, Your Honor, based on the
20   allegation of misrepresentation, I can't leave that alone.
21   You'll see in our papers there's no misrepresentations made
22   with regard to this hearing.
23           Thank you.
24           THE COURT:  I would -- I would ask counsel -- I
25   have so much to do on the merits of your dispute, can you

```
 1    take the fighting match outside on the playground and just
 2    let me deal with the merits?
 3            MR. PIROZZOLO:  Thank you, Your Honor.
 4            MR. HADZI-ANTICH:  Certainly, Your Honor.
 5            MR. ZALEZNIK:  Your Honor, I just want -- if I
 6    could, Your Honor, I just wanted to alert the Court that I am
 7    traveling on the morning of March 23rd -- I'm sorry --
 8    May 23rd so that I would not be available to be at the court
 9    in person, but I'm sure that counsel can proceed without me
10    being present.
11            THE COURT:  Okay.  That's fine.
12            MR. HAJEK:  Your Honor, if I could, just a
13    clarification about the nature of the hearing.  From the
14    government's perspective, we don't think there's a need for
15    witnesses.  Certainly, we have none of our own.
16            As I've heard plaintiffs' counsel state, I don't
17    believe he intends to draw our witnesses.  He indicated that
18    he would be happy to rely on his declarations.  I think
19    Seafreeze's or -- I'm sorry -- Vineyard Wind's counsel
20    indicated that its witnesses could be available.  If we hold
21    it without witnesses, that could expedite the whole
22    proceeding.
23            THE COURT:  I haven't read the papers.  I don't
24    know if there are disputes of fact that I need to make a
25    decision about.  If there are no disputes of fact, then maybe
```

```
 1   we don't need a witness.  But if a witness is asserting a
 2   fact that there will be a dispute, then they're entitled to
 3   be -- on a preliminary injunction, I'm going to let them be
 4   cross-examined, right?
 5           I mean, I don't know what -- I haven't read the
 6   papers yet.
 7           MR. HAJEK:  Okay.  Understood.
 8           THE COURT:  For plaintiffs' counsel, you were
 9   anticipating that you could do this without needing to have
10   your witnesses cross-examined.  Is that because there's
11   unlikely to be any factual dispute there?
12           MR. HADZI-ANTICH:  That's correct, Your Honor.  I
13   think --
14           THE COURT:  Okay.
15           MR. HADZI-ANTICH:  -- we have numerous declarations
16   that we would rely on, sworn dilations.
17           THE COURT:  Okay.  And, Mr. Pirozzolo, are you
18   looking to cross-examine plaintiffs' witnesses, or are you
19   simply offering your own witnesses?
20           MR. PIROZZOLO:  We would certainly be interested in
21   cross-examining.  I believe they submitted one declaration in
22   connection with the preliminary injunction.  So to the extent
23   that our witnesses are being made available for
24   cross-examination, we would like to cross-examine theirs.
25           THE COURT:  So maybe there's a confusion here.
```

```
 1    Plaintiffs are saying they submitted a dozen affidavits with
 2    the motion.
 3              MR. HADZI-ANTICH:  Yes, Your Honor.
 4              MR. PIROZZOLO:  I apologize.  I only see one.
 5              MR. HADZI-ANTICH:  That's in connection with the
 6    entire briefing.
 7              THE COURT:  Well, we're not doing the entire
 8    briefing.  We're doing your motion for preliminary injunction
 9    and a motion to stay.
10              MR. HADZI-ANTICH:  With regard to the motion to
11    stay, there's one declaration that we filed.  It's David
12    Aripotch.  He's a commercial fisherman.  I don't know what
13    his schedule is.  I will do my best to make him available
14    May 23rd.
15              THE COURT:  Okay.
16              MR. HADZI-ANTICH:  He -- most of the time, he's out
17    fishing.
18              THE COURT:  Okay.  We'll do the best we can.
19              MR. HADZI-ANTICH:  Yes.
20              THE COURT:  That's all I can do.
21              MR. PIROZZOLO:  Yes, Your Honor.
22              THE COURT:  And, you know, I'm -- there's a lot of
23    paper.  I'm making my way through it.  There are a lot of
24    steps here.  There are a lot of claims.
25              You know, I note in my skimming your papers that
```

Case 1:22-cv-11091-IT   Document 135   Filed 06/16/23   Page 17 of 20
17

1  you suggest that at least some of your claims have a
2  reasonable likelihood of success on the merits.  If you
3  wanted to identify which ones you don't think have a
4  reasonable likelihood of success on the merits, that might
5  speed things up.
6           MR. HADZI-ANTICH:  The only reason why we put the
7  two main claims in the motion for stay is that those could be
8  compressed into the 20 pages.  We think that all of the
9  claims have a reasonable likelihood of success on the merits,
10 but --
11          THE COURT:  So what is it that you're asking me to
12 do?  Look at those two or look at all of them?
13          MR. HADZI-ANTICH:  On the motion for stay, just
14 look at the two that are in the motion for stay --
15          THE COURT:  Okay.
16          MR. HADZI-ANTICH:  -- but not to ignore with regard
17 to the motion for summary judgment the other --
18          THE COURT:  Well, I'm trying my best not to ignore
19 it.  You have 32 or 34 claims.  I am trying to make my way
20 through them.
21          MR. HADZI-ANTICH:  I understand, Your Honor.
22          THE COURT:  I will really think hard the next time
23 someone asks me for a lot of extra pages.  That doesn't help
24 anybody and sort of, frankly, to be honest, left me with the
25 impression that it was more important for the litigation to

```
 1   bury what we're doing here than to get to a quick answer.  So
 2   I am working my way through it.  I really am doing my best.
 3            MR. HADZI-ANTICH:  That was certainly not our
 4   intent.
 5            THE COURT:  Okay.  Well, I will see you all on the
 6   morning of the 30th.  I will tell you --
 7            THE DEPUTY CLERK:  23rd, Your Honor.
 8            THE COURT:  I'm sorry; 23rd.  Okay.  Yeah, I was
 9   going to say, the 30th, we have to worry about flights.  I
10   will see you on the morning of the 23rd.  Having just tried
11   to fly on our domestic airlines recently, I worn you not to
12   cut things too close as you try to fly in.  The airlines are
13   not reliable these days, and we do need to proceed with the
14   schedule.  So --
15            MR. ZALEZNIK:  Just so that there's no
16   misunderstanding, I am traveling on the morning of the 23rd.
17            THE COURT:  You are excused.
18            MR. ZALEZNIK:  Okay.  Thank you, Your Honor.
19            THE COURT:  Unless -- unless your co-counsel needs
20   you there.  But assuming he's excused you, I certainly have
21   excused you.
22            MR. ZALEZNIK:  Thank you, Your Honor.
23            THE COURT:  Okay.  Anything else we need to cover
24   today?
25            MR. PIROZZOLO:  Not from Vineyard Wind, Your Honor.
```

1   Thank you.
2              MR. HAJEK:  No, Your Honor.
3              THE COURT:  Okay.  Thank you.  See you on the 23rd.
4              THE DEPUTY CLERK:  We are in recess.
5         (Court in recess at 2:10 p.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

I, Robert W. Paschal, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 16th day of June, 2023.

/s/ Robert W. Paschal
_____

ROBERT W. PASCHAL, RMR, CRR
Official Court Reporter